UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| JOHN P. GEARNHARDT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 2:17-cv-00186-JRS-DLP |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**Entry Granting Defendant's Motion for Summary Judgment
And Directing Entry of Final Judgment**

Plaintiff John P. Gearnhardt, a former federal inmate, alleges that he is entitled to
monetary relief because he received inadequate medical treatment following cervical fusion
surgery in April 2016. He contends that Bureau of Prison (BOP) medical providers left his
surgical staples in his neck beyond the timeframe in which they were instructed to remove the
staples and failed to change the dressing on his wounds, leading to an infection, pain,
disfigurement, and scarring of his neck. The United States of America is allegedly liable under
the Federal Tort Claims Act (FTCA) based on the theory that medical personnel at the Federal
Correctional Complex in Terre Haute, Indiana (FCI Terre Haute), provided Mr. Gearhardt with
inadequate medical treatment.

The United States seeks resolution of the claims alleged against it through summary
judgment. The United States argues that Mr. Gearnhardt cannot establish that the United States
was negligent with respect to his medical care. For the reasons explained below, the United States'
motion for summary judgment, dkt [29], is **granted.**

# I. Standard of Review

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## II. Material Facts

Because the Court must view the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor, the following facts are not

necessarily objectively true, but are construed in favor of Mr. Gearnhardt for the purposes of resolving the pending motion for summary judgment.

At the time of the medical treatment at issue in this action, Mr. Gearnhardt was incarcerated at the Federal Correctional Institution in Terre Haute, Indiana, ("FCI Terre Haute"). On July 31, 2014, upon Mr. Gearnhardt's arrival at FCI Terre Haute, RN David Decker performed a health screen of Mr. Gearnhardt in which Mr. Gearnhardt reported "L/S pain x 10 years." Dkt. 29-3. Mr. Gearnhardt's medical records reveal that Mr. Gearnhardt's condition has required extensive treatment since his arrival at FCI Terre Haute including an MRI of his cervical spine and a cervical epidural steroid injection in March 2015, and an anterior cervical discectomy and fusion at C4-5 and C5-6 performed at Union Hospital in August 2015. Dkts. 29-5 through 29-8, 29-12.

Although the surgery performed in August 2015 initially relieved Mr. Gearnhardt's symptoms, he experienced increased pain and weakness in his left arm in January 2016. Dkts. 29-13 & 14. On February 10, 2016, Dr. Narotam, Mr. Gearnhardt's neurosurgeon, diagnosed Mr. Gearnhardt with cervical radiculopathy and recommended that he undergo surgery. Dkt. 29-20.

Dr. Narotam performed the surgery on April 21, 2016. Dkt. 29-50. Mr. Gearnhardt's posterior cervical incision was closed with surgical staples and he had a staple placed in his left scalp. *Id*. He remained in the hospital until April 25, 2016, when he was discharged and returned to FCI Terre Haute. Dkt. 29-23.

The patient copy of the Union Hospital Discharge Instructions as maintained in the BOP records contains, among other instructions, a handwritten note, stating, "Has a staple in L side of his head (just one) it can be removed in 10-14 days. per Dr. Koj." Dkt. 29-22. The discharge

instructions, as subpoenaed directly from Union Hospital, contain typewritten instructions that differ from the handwritten instructions found in FCI Terre Haute's records. The instructions produced by Union Hospital state: "remove dressing, shower and pat dry and apply clean dressing. Wear soft collar for comfort. [S]taples out 10 to 14 days, dont [sic] forget the 1 staple on the left side of his head." Dkt. 29-50.

The discharge instructions do not indicate whether the staples should be removed 10-14 days after surgery or 10-14 days after discharge. Mr. Gearnhardt testified at his deposition that someone at the hospital told him the staples should be removed either 6-7 or 7-10 days after discharge. This date range would match up with an instruction to remove the staples 10-14 after surgery because he was discharged 4 days after surgery. The United States argues that this statement by Mr. Gearnhardt is hearsay and therefore inadmissible. But even if it were admissible, it would not change the discharge instructions received by FCI Terre Haute medical staff which stated that the staples were to be removed within 10-14 days. Mr. Gearnhardt acknowledges, under penalty of perjury in his response brief, that the treating physician's orders were to remove the staples within 10-14 days. Dkt. 40, p.5.

Upon Mr. Gearnhardt's return to FCI Terre Haute, he was seen by RN Sarah Walters Dkt. 29-23. RN Walters noted:

> Paperwork received: follow up with DR. [sic] Narotam in 1 month. EMG in 6 weeks post op @ june [sic] 2nd. Follow up with Dr. Wilson at FBOP. Activity: no lifting greater than 10 pounds. Limitations: no bending or twisting of the spine neck. Remove dressing, shower and pat dry and apply clean dressing. Wear soft collar for comfort. Has staple in left side of his head (just one). It can be removed in 10-14 days per Dr. Koj. Recommend hydrocodone. Inmate complains of pain. MD on call notified. VO received and verified for Percocet 2 tabs TID x 3 days. No further orders at this time.

*Id*. RN Walters also entered new medication orders for oxycodone/acetaminophen 5MG/325MG and submitted consultation requests for neurosurgery follow-up with Dr.

Narotam and an EMG in six weeks. Dkt. 29-23.[1]

On May 4, 2016, 13 days after his surgery and 9 days after his discharge, Mr. Gearnhardt inquired about a physical therapy consult and the extension of pain medication after surgery. Dkt. 29-24. He stated that he did not need Percocet, as he felt it was too strong, and requested Tylenol #3 tabs. Dkt. 29-23. NREMT Aaron Nimz submitted a consultation request for an in-house physical therapy evaluation and notified the medical provider, who gave a verbal order for Tylenol #3 tabs.

Mr. Gearnhardt saw NREMT Nimz again on May 6, 2016, 15 days after his surgery and 11 days after his discharge, complaining that he was "still in pain," describing the pain as sharp, and rating it as a "9" on a scale of 0-10. Dkt. 29-25. Upon examination, NREMT Nimz noted, "Staples intact on posterior neck. Wound is still healing. No drainage noted at this time." *Id*.

On May 9, 2016, 18 days after his surgery and 14 days after his discharge, at approximately 8:11 a.m., RN Matthew Worthington saw Mr. Gearnhardt for a follow-up encounter. Dkt. 29-26. Mr. Gearnhardt reported that he had "pretty bad pain," which he rated as a "7," and that his wound stank. RN Worthington noted that Mr. Gearnhardt's staples were still in, that the suture line was intact, but the wound was draining a green substance, was "very red, puffy," that the redness surrounded the suture line and extended 1 inch into the surrounding tissue, and that the entire suture line was swollen. A wound culture was collected, and the

_____

[1] The parties dispute whether FCI Terre Haute medical staff realized that Mr. Gearnhardt had multiple staples in his neck. Mr. Gearnhardt argues that the notation on the discharge instructions refers only to the staple in his head and that this caused FCI Terre Haute medical staff to leave his neck staples in place for too long, leading to infection. In its answer, the United States denied that Mr. Gearnhardt had multiple staples in his neck, but after discovery, the defendant now acknowledges that Mr. Gearnhardt returned to FCI Terre Haute with multiple staples in his neck.

situation was reported to Dr. Klint Stander, who gave verbal orders to leave the staples in, start Bactrim and Rocephin, and perform daily wound care and dressing changes. Mr. Gearnhardt was started on the new medications and received an injection of Rocephin at approximately 9:16 a.m. that same day. *Id.*; Dkt. 29-27.

Although the medical records do not reveal when Mr. Gearnhardt's staples were removed, he recalls that RN Worthington removed the surgical staples, approximately four at a time over the course of three or four days, beginning on either May 9, 2016, or May 12, 2016. Based on the May 9, 2016, note in which Dr. Stander ordered that the staples be left in, the staples were probably not removed that day. But they were removed sometime before May 17, 2016, when Dr. Trueblood noted that there were scars overlying previous staple sites. Dkt. 29-31.

On May 13, 2016, FNP Blila reviewed the Wound Culture Report, which found Methicillin Resistant Staphylococcus Aureus infection ("MRSA"). Dkt. 29-29. FNP Blila noted that Mr. Gearnhardt was currently on Bactrim DS and scheduled for follow up after completion of the antibiotic.

On May 16, 2016, Mr. Gearnhardt saw RN Worthington for a sick call encounter reporting pain in his neck. Dkt. 29-30. The following day, he was seen by Dr. Elizabeth Trueblood for follow-up after his neck surgery. Dkt. 29-31. Upon examination, Dr. Trueblood noted that the skin on Mr. Gearnhardt's posterior neck at the incision site was clean, there was some scabbing present without any drainage, warmth, or redness, scars were overlying previous staple sites, and no hardness was present. Dr. Trueblood concluded that the infection had cleared, added Naproxen for Mr. Gearnhardt's pain, and advised him to finish out the antibiotics.

On May 19, 2016, Mr. Gearnhardt was seen for physical therapy by P.T. Ashley Matchett. Dkt. 29-32. P.T. Matchett noted that the incision was nearly fully healed, though it still had some moderate redness, and there were two small open areas on either side of the incision.

A week later, on May 26, 2016, PA Genevieve Daugherty evaluated Mr. Gearnhardt, who reported to sick call stating that the skin infection on his neck had returned "x 2 days," he had green pus seeping from the top of his incision, and pain from the inside out. Dkt. 29-33. On examination, PA Daugherty noted a one-centimeter round and raised area at the top of the post-op incision at the posterior neck; no drainage could be expressed and there were no open or draining areas. PA Daugherty further observed that the surrounding three centimeters were red with a mild increase in warmth, but the rest of the incision was healed. She discussed the case with the compound MD, who directed to start Bactrim x 30 days and Rifampin x 10 days. PA Daugherty made a non-formulary request for the Rifampin and instructed Mr. Gearnhardt to keep the area clean and dry and to return if there was any worsening or no improvement.

On May 31, 2016, Mr. Gearnhardt was evaluated by PA Daugherty again, complaining of an itchy rash with Rifampin. Dkt. 29-34. On exam, PA Daugherty noted the initial infected area of Mr. Gearnhardt's midline posterior cervical scar was now scabbed and appeared to be healing very well. Mr. Gearnhardt was started on Benadryl and instructed to return if he experienced any worsening or evolving symptoms.

Mr. Gearnhardt saw P.T. Matchett for physical therapy on June 9, 2016. Dkt. 29-35. P.T. Matchett noted that Mr. Gearnhardt was now 7-8 weeks post-op posterior cervical fusion, the incision was now healing well, the redness was resolving, nearly all the scab had come off, and the skin had closed over well. As P.T. Matchett determined that Mr. Gearnhardt was

functionally independent, he released Mr. Gearnhardt from physical therapy.

During an April 27, 2017, sick call encounter, P.A. Mata noted that Mr. Gearnhardt had a well-healed scar at the midline of posterior neck, with no sign of irritation, rash, or outbreak. Dkt. 29-48.

On May 3, 2017, Mr. Gearnhardt was evaluated by Dr. Narotam at Union Hospital Neuroscience. Dkt. 29-49. Dr. Narotam showed Mr. Gearnhardt his recent radiological images and concluded that he did not have a neurosurgically correctable condition at that time.

On behalf of the United States, Dr. Eric A. Potts, a board certified neurological surgeon, with a special expertise in spinal surgery, and an Assistant Professor of Neurological Surgery at the Indiana University School of Medicine, reviewed Mr. Gearnhardt's complaint, his medical records, and imaging studies and summarized his care as relevant to this action. Dkts. 29-51, 29-52. Based on his review of Mr. Gearnhardt's medical records and his education, training, and experience as a board-certified neurosurgeon, Dr. Potts concluded, to a reasonable degree of medical certainty, that the care that BOP medical staff provided to Mr. Gearnhardt from January 6, 2016, through May 8, 2017, was medically appropriate and within the standard of care.

Specifically, Dr. Potts opined that the incidence of wound infection in posterior cervical spine incisions is between 1-3% and that Mr. Gearnhardt's infection was a stochastic, or random, event. According to Dr. Potts, the staples in the posterior cervical spine were not the cause of Mr. Gearnhardt's wound infection. Rather, Dr. Potts determined that the staples were left in place additional time because of the wound infection and the tenuous nature of the incision, a decision that was appropriate and within the standard of care. Dr. Potts further concluded that Mr. Gearnhardt was treated appropriately with local wound care and

antibiotics, the infection cleared with these interventions, and he did not require any further surgical care.

Dr. Potts also noted that postoperative patients are routinely given material to change wound dressings themselves. Dr. Potts further opined that this was not the cause of Mr. Gearnhardt's infection. Mr. Gearnhardt did not address this issue in his response brief.

### III. Discussion

Mr. Gearnhardt argues that he endured a painful infection as a result of the negligent health care he received at FCI Terre Haute. The United States argues that it is entitled to summary judgment because the care Mr. Gearnhardt received was appropriate and Mr. Gearnhardt's infection was a random event that can be expected after surgery.

The law that applies in this case is the FTCA. Whether a FTCA claim can be made against the United States depends on whether a private entity under like circumstances would be liable "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Because the actions Mr. Gearnhardt complains of occurred in Indiana, Indiana law applies to this case.

The United States argues that to survive summary judgment, Mr. Gearnhardt must have evidence to support a medical malpractice claim. The elements of such a claim are: "'(1) that the [United States] owed a duty to the plaintiff; (2) that the [United States] breached that duty; and (3) that the breach proximately caused the plaintiff's injuries.'" *Siner v. Kindred Hosp. Ltd. P'ship*, 51 N.E.3d 1184, 1187 (Ind. 2016) (*quoting Mayhue v. Sparkman*, 653 N.E.2d 1384, 1386 (Ind. 1995)). To prove causation, a plaintiff must present specific facts that would demonstrate that defendant's allegedly negligent behavior caused the plaintiff's injuries. *Midwest Commerce Banking Co. v. Livings*, 608 N.E.2d 1010, 1013 (Ind. Ct. App. 1993); *see*

*also Topp v. Leffers*, 838 N.E.2d 1027, 1032 (Ind. Ct. App. 2005) (stating that proving proximate causation requires that the plaintiff show "a reasonable connection between a defendant's conduct and the damages which a plaintiff has suffered").

A. Breach of Standard of Care

The United States does not dispute that the BOP owed a duty of care to Mr. Gearnhardt during his incarceration at FCI Terre Haute. 18 U.S.C. § 4042(a)(2) ("The Bureau of Prisons . . . shall provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons . . . convicted of offenses against the United States. . . ."); *see also Gottlieb v. United States*, 624 F. Supp. 2d 1011, 1025 (S.D. Ind. 2008) ("Indiana law recognizes that a custodian has a legal duty to exercise reasonable care to preserve the life, health and safety of a person in custody.") (internal citations omitted).

The issue is whether FCI Terre Haute medical staff breached their duty to Mr. Gearnhardt. Mr. Gearnhardt argues that he developed pain in the area of his staples more than 10 days after his discharge, but the discharge instructions stated that the staples were to be removed within 10-14 days. Although the instructions do not specify whether the staples were to be removed 10-14 days after surgery or 10-14 days after discharge, the instructions were *discharge* instructions and therefore it was reasonable for FCI Terre Haute medical staff to remove Mr. Gearnhardt's staples 10-14 days after his discharge. When he presented with an infection on day 14, Mr. Gearnhardt received treatment for the infection. Once the infection was present, it was not medically appropriate to remove the staples until the infection had cleared. Although the records do not indicate precisely when the staples were removed, they were removed before May 17, 2016, when medical records note the condition of the previous staple sites. The records indicate that Mr.

Gearnhardt recovered from the infection and that his surgeon determined that he did not require further surgical intervention.

Mr. Gearnhardt's complaint is not that FCI Terre Haute medical staff failed to remove his staples on day 14, when his incision was clearly infected. Instead, he argues that they should have removed the staples before they began to hurt on day 11. He argues that because the discharge instructions referenced only one staple in his head, FCI Terre Haute medical staff were unaware of the staples in his neck and therefore left them in for too long. The medical records indicate that FCI Terre Haute medical staff were aware of the multiple staples in Mr. Gearnhardt's neck by at least May 6, 2016, 11 days after Mr. Gearnhardt's discharge, when NREMT Nimz noted that the "[s]taples [were] intact on posterior neck." Dkt. 29-25. Because it is clear from the record that FCI Terre Haute medical staff were aware of the multiple staples before the time in which they had been instructed to remove them had expired, the dispute between the parties regarding their prior knowledge of the staples is not material to the question of whether FCI Terre Haute medical staff's treatment of Mr. Gearnhardt was negligent.

There is no evidence in the record that establishes that FCI Terre Haute medical employees breached the standard of care by not removing Mr. Gearnhardt's staples before day 14. Discharge instructions they received from the hospital upon Mr. Gearnhardt's discharge stated that the staples should be removed within 10-14 days. The standard of care did not require that they remove the staples on the first day of the time period they had been given by the hospital. Without evidence upon which a reasonable jury could conclude that FCI Terre Haute medical employees breached the standard of care, the United States is entitled to judgment as a matter of law.

B. Causation

In addition, there is no evidence of causation. The expert testimony produced by the defendant indicates that Mr. Gearnhardt's infection was a random event not caused by his staples or the fact that he changed his own wound dressings.

C. *Res Ipsa Loquitur*

Mr. Gearnhardt argues that although he does not have expert testimony to oppose the opinion of Dr. Potts, he can rely on the doctrine of *res ipsa loquitur* to survive summary judgment. The doctrine of *res ipsa loquitur* "allows an inference of negligence to be drawn from surrounding facts." *Thomson v. Saint Joseph Reg. Med. Ctr.*, 26 N.E.3d 89, 94 (Ind. Ct. App. 2015). Cases that "do not require expert testimony generally involve the physician's failure to remove surgical implements or foreign objects from the patient's body." *Simms v. Schweikher*, 651 N.E.2d 348, 350 (Ind. Ct. App. 1995). *See, e.g, Ciesiolka v. Selby,* 261 N.E.2d 95 (1970) (finding that jury did not need expert testimony to conclude that doctor negligently left mesh in patient's abdomen). Mr. Gearnhardt argues that the staples were foreign objects left in his body.

But, staples are not accidentally left in a patient after surgery. They are purposely placed to promote healing. And, in Mr. Gearnhardt's case, even when the staples were left in beyond the expected removal date, it was not due to negligence, but a medical decision based on his infection. The doctrine of *res ipsa loquitur* is inapplicable to these circumstances. *Woods v. United States*, No. 5:15-CT-3049-FL, 2016 WL 4468177, at *6 (E.D.N.C. Aug. 24, 2016); *Boston v. GYN, Ltd.*, 785 N.E.2d 1187, 1191 (Ind. Ct. App. 2003).

## IV. Conclusion

In the absence of evidence of a breach of duty or causation, the United States is entitled to summary judgment. Therefore, the United States' motion for summary judgment, dkt [29], is **granted.** Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 11/13/2018

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

JOHN P. GEARNHARDT
PO Box 1904
Oshkosh, WI 54902

Gina M. Shields
UNITED STATES ATTORNEY'S OFFICE
Gina.Shields@usdoj.gov